IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


ARVELLA NICHOLE TAYLOR                                           PLAINTIFF

                  v.                      Civil No. 10-2151

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                  DEFENDANT

**MEMORANDUM OPINION**

I.     **Factual and Procedural Background**

          Plaintiff, Arvella Nichole Taylor, brings this action seeking judicial review, pursuant to 42

U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration

("Commissioner") denying her applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

          Plaintiff protectively filed her DIB and SSI applications on August 13, 2008, alleging

disability as of September 1, 2006, due to attention deficit/hyperactivity disorder ("ADHD") and

bipolar disorder.  Tr. 10, 176.  On the application date, Plaintiff was twenty five years old with an

eleventh grade education and automobile maintenance training.  Tr. 44, 50-54, 171, 179, 181, 183-

190, 228, 236, 265, 340.  She has past relevant work as a stocker.  Tr. 18, 46-48, 59-60, 177-178.

          Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 100-105,

109-112. At Plaintiff's request, an administrative hearing was held on January 14, 2010.  Tr. 38-95.

Plaintiff was present at this hearing and represented by counsel.  The ALJ rendered an unfavorable

decision on April 14, 2010, finding Plaintiff was not disabled within the meaning of the Act.  Tr. 7-

20.  Subsequently, the Appeals Council denied Plaintiff's Request for Review on September 24,

2010, thus making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.  Plaintiff now

seeks judicial review of that decision.

II.     **Medical History**

On September 15, 2004, Plaintiff underwent a psychological screening evaluation for

Arkansas Rehabilitation Services.  Tr. 228-233.  Plaintiff received resource services in school.  Tr.

228.  She was reportedly diagnosed with ADHD in fifth grade.  Tr. 229.  Plaintiff's behavior and

adaptive functioning reportedly improved dramatically on medication.  Tr. 229, 231.  However, she

was no longer taking medication due to cost.  Tr. 229.

Plaintiff's cooperation during testing varied.  Tr. 229.  On the Wechsler Abbreviated Scale

of Intelligence, Plaintiff received a full-scale IQ score of 87, which was within the low average

range.  Tr. 229.  Plaintiff was assessed with mathematics disorder, mood disorder not otherwise

specified, and ADHD, combined type.  Tr. 232.  Letitia C. Hitz, Ph.D, believed the significant

variability among skill areas represented a learning disorder.  Tr. 232.  She also noted Plaintiff's

inattention/hyperactivity and mood disturbances might impact rehabilitation efforts.  Tr. 232.

However, Dr. Hitz found that, with counseling, vocational development, and supportive services,

Plaintiff may reasonably function by means of competitive employment.  Tr. 233.

In February and March 2006, Plaintiff went to Western Arkansas Counseling and Guidance

Center ("WACGC") for individual therapy.  Tr. 235-250.  Plaintiff indicated problems with

attention, concentration, and social discomfort, but stated she did well while on medication.  Tr. 235-

236.  She was taking Strattera for attention/concentration difficulties, with good results.  Tr. 237.

She had worked two years as a stocker at a grocery store.  Tr. 236.  Plaintiff stated she planned to

go to Hot Springs to complete her GED and receive occupational training.  Tr. 237.

On examination, Plaintiff's mood was calm and thought processes were logical and coherent. Tr. 237.  Attention and concentration appeared normal while on Strattera.  Tr. 237.  Plaintiff's memory was intact and she had good insight and judgment.  Tr. 237.  Charles Pennington, a licensed social worker, noted no suicidal potential.  Tr. 237.  He diagnosed Plaintiff with ADHD, combined type, and estimated her Global Assessment of Functioning ("GAF") score at 60.  Tr. 238. Pennington gave Plaintiff a good prognosis.  Tr. 239.

On March 2, 2006, Plaintiff reported some self-mutilating behaviors (biting herself) and some suicidal ideation.  Tr. 239.  However, she stated "Strattera works wonders" for her attention and concentration problems and sadness.  Tr. 239.  Plaintiff was prescribed Strattera and referred to a medication assistance program.  Tr. 240.  Her GAF score was estimated at 65.  Tr. 240.

From March 2006 through March 2008, Plaintiff went to Hot Springs Rehabilitation Center, where she took automotive technology classes and received therapy and medication management. Tr. 251-335.  Randall Wells, M.D., diagnosed Plaintiff with bipolar disorder, co-morbid with ADHD, and learning disorder in mathematics.  Tr. 252, 266.  She was initially treated with antidepressants, but after increased anger and acting out, these medications were discontinued and Plaintiff was treated with melatonin, Strattera, and lithium.  Tr. 253-254, 258, 260, 262-263.  There were some issues with compliance, which improved over the course of treatment.  Tr. 255-256.  At times, Plaintiff engaged in self-mutilating behavior such as biting, cutting herself, and banging her head into a sink.  Tr. 262, 304, 308-309.  However, Plaintiff's behavior improved once her medication regimen was adjusted.  Tr. 261.  On May 30, 2007, Plaintiff stated she enjoyed, and was doing well, in her classes.  Tr. 255.  On November 28, 2007, Dr. Wells noted that Plaintiff was doing much better on a regimen of Strattera, melatonin, and low-dose lithium.  Tr. 251.  As of March 14,

2008, Plaintiff had completed her vocational training and was discharged from the program and deemed ready for employment.  Tr. 269.

Following her discharge from vocational rehabilitation, Plaintiff was referred to Max Baker, M.D., for counseling.  Tr. 347-350.  On September 11, 2008, Dr. Baker noted that Plaintiff had marginal insight and judgment and poor self-esteem.  Tr. 348.  He noted obvious mood lability and increased motor hyperactivity during the interview.  Tr. 348.  Dr. Baker diagnosed Plaintiff with bipolar I disorder, ultra-rapid cycling, and ADHD, combined type.  Tr. 348.  He gave Plaintiff a GAF score of 45.  Tr. 348.  He prescribed lithium and Strattera, as Plaintiff was not taking any medication at the time, and noted that Plaintiff would reapply for Medicaid.  Tr. 348.  On October 30, 2008, Plaintiff stated she was finding it easier to be attentive and complete tasks.  Tr. 350.  She reported marked improvement in mood cycles.  Tr. 350.  By December 15, 2008, Plaintiff reported mood stabilization and better focus.  Tr. 392.

On September 22, 2008, Plaintiff saw Kathleen Kralick, Ph.D., for a consultative mental evaluation.  Tr. 337-345.  Plaintiff reported having difficulty passing her GED test.  Tr. 337.  She had recently walked out on her retail job when she became frustrated working the cash register.  Tr. 337.  Dr. Kralik noted a dramatic personality style, easy frustration, impulsive behavior, and a confrontational, grandiose, theatrical, and argumentative presentation.  Tr. 337, 341.  She observed narcissistic and insincere behavior, and found Plaintiff's dramatic and egocentric style to be representative of overall personality traits.  Tr. 341.  Dr. Kralick estimated Plaintiff's intelligence to be within the low average to average range.  Tr. 341.  However, she noted that Plaintiff's variable effort would likely result in inconsistent and possibly invalid test scores.  Tr. 341.

Dr. Kralick diagnosed Plaintiff with impulse control disorder not otherwise specified and personality disorder not otherwise specified (severe, with narcissistic, histrionic, and borderline personality features and associated dependent personality features). Tr. 343. She estimated Plaintiff's GAF score at 45-55, noting that Plaintiff seemed capable of acting at a higher level, but was disinclined to do so on any consistent basis. Tr. 343. She also believed Plaintiff's symptoms were more related to personality features rather than bipolar disorder. Tr.345.

Dr. Kralick noted some impairment in daily living, significant impairment in the ability to communicate and interact in a socially adequate manner, significant impairment in the ability to cope with the typical mental/cognitive demands of basic work-like tasks, a problematic ability to attend and sustain concentration and complete work-like tasks within an acceptable time frame, and an adequate ability to sustain persistence in completing tasks (but quite poor willingness). Tr. 244-245. She noted that "until the costs of acting as she does outweigh the benefits she receives, her prognosis for significant change is quite poor." Tr. 344. Dr. Kralick opined that Plaintiff's work performance would likely depend on personality and motivational issues rather than mental or cognitive impairment. Tr. 345. She found malingering/exaggeration of symptoms highly likely. Tr. 345.

In a Psychiatric Review Technique form dated October 6, 2008, Winston Brown, an agency specialist, considered Listing 12.08 (personality disorders), but determined Plaintiff's symptoms did not meet or equal the listed criteria. Tr. 358-371. He found mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. Tr. 368.

In a Mental Residual Functional Capacity ("RFC") Assessment, Dr. Brown determined Plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention

and concentration for extended periods, sustain an ordinary routine without special supervision and without being distracted by others, complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Tr. 354-357. He found that Plaintiff was not significantly limited in all other work-related categories and concluded that she would be capable of performing unskilled work. Tr. 356.

## III.   Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical

or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   **Discussion**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since September 1, 2006, the alleged onset date. Tr. 12. At step two, the ALJ found Plaintiff suffers from bipolar I disorder, ADHD, and personality disorder, all of which were considered severe impairments under the Act. Tr. 12-14. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 14-15. At step four, the ALJ found Plaintiff could perform work at all exertional levels, but was limited to performing work that is routine and repetitive in nature (complexity of tasks is learned and performed by rote, with few variables and little judgment required), supervision

is concrete, and contact with supervisors, coworkers, and the general public is not more than incidental or superficial.  Tr. 15-18.

With these limitations, the ALJ determined Plaintiff could no longer perform her past relevant work.  Tr. 18.  However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[1]  Tr. 18-19. Accordingly, the ALJ determined Plaintiff was not under a disability from September 1, 2006, the alleged onset date, through April 14, 2010, the date of the decision.  Tr. 19-20.

On appeal, Plaintiff contends that the ALJ erred by: (1) unfairly reviewing her claim; and (2) failing to properly determine her RFC.  *See* Pl.'s Br. 12-16.  The court disagrees.

A.  Fair Review

Plaintiff alleges the ALJ erred by failing to conduct an additional hearing when a portion of her mother's testimony was missing from the hearing transcript.  Tr. 81.  ALJ Penny Smith presided over the administrative hearing.  Tr. 38-95.  However, ALJ Edward Starr rendered the agency decision after ALJ Smith reportedly retired.  Tr. 7-24; *see* Pl.'s Br. 12.  Defendant responds that Plaintiff's mother's testimony was cumulative and would not have affected the ALJ's final determination.  *See* Def.'s Br. 2-4.

The undersigned finds that the minor omission in Plaintiff's mother's testimony does not warrant reversal.  A large portion of Ms. Taylor's testimony was available in the transcript and corroborates Plaintiff's own statements concerning her anger and mood difficulties.  Tr. 81-83.  As such, the missing testimony did not impair ALJ Starr's ability to render a decision in this case.  The

---

[1] The ALJ determined Plaintiff could perform the requirements of representative unskilled occupations such as packing machine operator, of which there are 3400 medium jobs regionally and 165,000 medium jobs nationally, and sewing machine operator, of which there are 2500 medium jobs regionally and 17,000 medium jobs nationally, and 2500 light jobs regionally and 250,000 light jobs nationally.  Tr. 19.

ALJ had the benefit of all of Plaintiff's treatment records as well as her subjective statements regarding her limitations. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment). Therefore, the undersigned finds no error.

    B.  <u>RFC Determination</u>

    Plaintiff argues that the ALJ erred in his RFC assessment. Pl.'s Br. 13-16. At the fourth step of the evaluation, a disability claimant has the burden of establishing his or her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

    Plaintiff contends the ALJ should have given more weight to the opinions of Drs. Hitz and Kralick. *See* Pl.'s Br. 13-16. Dr. Hitz evaluated Plaintiff two years prior to the alleged onset date. Although her findings provide evidence of continuity of symptoms, they are less persuasive than medical records from treating physicians *during* the relevant time period. *See Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998) (claimant must establish the presence of a disability during the time for which benefits may be awarded). Moreover, the undersigned fails to understand how the ALJ's

opinion significantly differs from Dr. Hitz's ultimate conclusion that, with counseling, vocational development, and supportive services, Plaintiff might reasonably function by means of competitive employment.  Tr. 233.

The ALJ discussed Dr. Kralick's opinion in detail, but ultimately found her opinion less persuasive given her conclusion that malingering/exaggeration was highly likely.  Tr. 14, 345; *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (an ALJ may discount a claimant's allegations if there is evidence of malingering or exaggeration).  Furthermore, Dr. Kralick evaluated Plaintiff on one occasion and was not a treating physician.  *Kirby v. Astrue,* 500 F.3d 705, 709 (8th Cir.2007) (consulting physician's opinion deserves no special weight); *Charles v. Barnhart,* 375 F.3d 777, 783 (8th Cir.2004) (generally, when consulting physician examines claimant only once, his opinion is not considered substantial evidence).

It is the ALJ's function to resolve conflicts among various treating and examining physicians. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).  Here, the evidence supports the ALJ's ultimate conclusion, as numerous records from WACGC, Dr. Wells, and Dr. Baker, reveal that Plaintiff's attention and behavior markedly improved with consistent use of medication.  Tr. 237, 239, 251, 261, 350, 392; *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (impairments that can be controlled with treatment or medication are not considering disabling).  Additionally, Plaintiff's ability to obtain an automotive training certificate from Hot Springs Rehabilitation Center shows that she is capable of applying herself to achieve a task and conforming her behavior to accepted norms. For these reasons, substantive evidence supports the ALJ's RFC determination.

Finally, Plaintiff makes several vague and conclusory arguments concerning Plaintiff's combined impairments, development of the record, and the hypothetical question posed to the

vocational expert.  *See* Pl.'s Br. 15-16.  These arguments have no merit.  The ALJ expressly stated that he considered the combined effects of Plaintiff's impairments. Tr. 14; *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (claimant's conclusory statement that the ALJ failed to consider the combined effects of his impairments was unfounded).  Additionally, the record contained sufficient evidence for the ALJ to rely on in making his disability determination.  *See Halverson v. Astrue*, 600 F.3d 922, 933-934 (8th Cir. 2010) (ALJ fully developed the record where there was sufficient medical evidence to determine whether claimant was disabled).  Finally, a hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ.  *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)).  Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations adopted by the ALJ.  *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996).  The ALJ may properly exclude, as he did in this instance, any alleged limitation or impairments he rejects as untrue or unsubstantiated.  *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001).  Accordingly, substantial evidence supports the ALJ's decision that Plaintiff was not disabled at any point between September 1, 2006, the alleged onset date, and April 14, 2010, the date of the administrative decision.

## V.    Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed.  Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 9th day of December 2011.


*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-11-